## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

RITA TURCO,

        Plaintiff,

vs.                                 Case No. 3:04-cv-1168-J-32MCR

FIDELITY INFORMATION
SERVICES, INC., etc.,

        Defendant.

_____

## ORDER[1]

      This case is before the Court on Defendant Fidelity Information Services, Inc.'s Motion for Summary Judgment (Doc. 23).   Plaintiff, Rita Turco, filed a response (Doc. 26) and moved to strike Exhibit "A" to the Declaration of Stella Painter ("the skills set spreadsheet") filed by Defendant in Support of its Motion for Summary Judgment (Doc. 27).  The Court heard oral argument on June 5, 2006 and entered an Order on June 7, 2006 dismissing with prejudice Plaintiff's age discrimination claims in Count I and II of Plaintiff's Complaint, denying Plaintiff's Motion to Strike, taking Defendant's Motion for Summary Judgment under advisement, and re-opening discovery for the purpose of permitting Plaintiff to inquire into all aspects of the skills set spreadsheet (Doc. 33).

_____

[1] Under the E-Government Act of 2002, this is a written opinion and therefore is available electronically.  However, it has been entered only to decide the motion or matter addressed herein and is not intended for official publication or to serve as precedent.

Following the Court's Order, Plaintiff's counsel conducted follow up depositions of several of Defendant's employees and on August 3, 2006, Defendant filed a Supplemental Memorandum in Support of its Motion for Summary Judgment (Doc. 34). Plaintiff filed its response on August 18, 2006 (Doc. 37). The Court has considered the Motion for Summary Judgment, the Supplemental Memorandum, and the responses.

**I.     BACKGROUND[2]**

Plaintiff's claims revolve around Defendant's termination of Plaintiff's employment as a computer applications programmer on May 27, 2003. (Doc. 23, p. 1).   Plaintiff worked for Defendant for less than two months prior to being terminated, as Plaintiff only became employed by Defendant on April 1, 2003, the date Defendant purchased the Information Services Division of Alltel.  Id. at 3. Plaintiff had, however, worked as a computer applications programmer for Alltel since 1999.  (Doc. 26,   pp. 2-3).   Throughout Plaintiff's employment as an applications programmer, Plaintiff was evaluated by her direct supervisor, Russ Sheffield ("Mr. Sheffield"), on numerous occasions.  In fact, Mr. Sheffield gave Plaintiff all of her yearly employment evaluations while she was an applications programmer, despite the fact that in January 2003, Anne Raymond ("Ms. Raymond")

_____

[2] Consistent with summary judgment practice, the facts stated are either undisputed or are stated in a light most favorable to Plaintiff.  See White v. Mercury Marine, 129 F.3d 1428, 1430 (11th Cir. 1997).

took over as Plaintiff's direct supervisor.[3]  (Doc. 24-19, p. 3).

Plaintiff's responsibilities as an applications programmer required her to write enhancements in the computer code and to complete fix tickets.  (Doc. 24-2, pp. 43-44).  Plaintiff's annual evaluations indicated Plaintiff had trouble meeting her fix ticket objectives.[4]   They did, however, show she was continuously improving her programming skills up until her last evaluation.  On Plaintiff's final evaluation -- the 2002 annual evaluation -- she was given a rating of "Least Effective."[5]  (Doc. 24-4, No. 10, p. 24).  On this evaluation, Mr. Sheffield made similar comments regarding her completion of fix tickets to those he made in each of her prior evaluations.  Specifically, he stated:

---

[3] Alltel's policy required Mr. Sheffield to give Plaintiff her last evaluation despite the fact that he was no longer her supervisor.  (Doc. 24-19, p. 3)**.**

[4] Fix tickets are tickets generated by the computer analysts and given to the programmers when there is a problem in the pre-written computer code which needs to be fixed.  (Doc. 24-2, p. 44).  Mr. Sheffield gave each of his programmers set fix ticket quotas so that they each had a goal of completing a designated number of fix tickets per month.  Initially, Plaintiff was required to complete two fix tickets per month, but over time her quota was raised to three per month.  (Doc. 24-2, pp. 15-16).  Mr. Sheffield also expected each of the programmers to complete each fix ticket within a forty hour period. (Doc. 24-20, p. 5).

[5] Defendant uses a ranking system which included four categories of ratings with which it ranked each of its employees.  The highest ranking an employee can receives is "Role Model."  Role Model denotes exceptional performance.  "Highly Valued" is the second highest rating which indicates an employee is functioning at an average level of performance.  "Developing" and "Least Effective" are the third and fourth rankings, respectively.  (Doc. 24, Ex. 21).

> [Plaintiff] did well on her enhancement assignments but has struggled to meet her fix requirements.  At the end of 2002 [Plaintiff] completed 10 fixes in 605 hours for 61 hours per fix.  She is five fixes short of the expected number for five months on fixes in 2002.   Since she completed her enhancement tasks early she was able to spend more time on fixes.  In the second half of the year her fix hours went down but she still ended up with 61 hours per fix which limited the number she could complete.  In 2003 [Plaintiff] will need to concentrate on completing her fix tickets in 40 hours.  If she can do that she will meet requirements on the number of fixes. [Plaintiff] is doing a good job on completion of her enhancement tasks on time.

Id. at 26.   The final evaluation was Plaintiff's only evaluation in which she received a "Least Effective" rating.  In fact, Mr. Sheffield had given Plaintiff a "Highly Valued" rating on her two evaluations preceding her final evaluation.  (Docs. 24-4, No. 8, p. 20; 24-4, No. 9, p. 22).

In January 2003, just before Plaintiff's final evaluation and several months before she was terminated, Alltel was forced to undergo a Reduction In Force ("RIF").  (Doc. 23, p. 9).   According to Defendant, this RIF affected Plaintiff's rating on her final evaluation and played a role in her termination.  Stella Painter ("Ms. Painter"), the Vice President of Systems Development, testified she instructed Mr. Sheffield to assign Plaintiff a rating of "Least Effective" on her 2002 annual review. She further testified she made this decision after evaluating Plaintiff's performance evaluations and the skill set spreadsheet[6] which ranked each of the employees on

---

[6] The department supervisors ranked each of the employees in their respective departments for purposes of creating the skills set spreadsheet. Management, then, combined all of the departments' submissions to create one cohesive list which included all employees.  Mr. Sheffield provided rankings and a
(continued...)

various areas, such as leadership, communication, productivity, and professionalism. (Doc. 24-7, p. 4; Doc. 24-23, Ex. A, p. 4).   The ten employees with the lowest skill set ratings were included in the January 2003 RIF.  (Doc. 24-7, p. 4).  Originally, Plaintiff was on the list to be let go in the RIF;  however, she was removed from the group once the final "cut number" was made.  Id.  After the ten lowest performers were let go in the RIF, Plaintiff became the next lowest performer.  Id.

Ms. Painter testified that the RIF prompted management to change the lowest performing employees' performance evaluations.  Specifically, Ms. Painter stated that when Alltel experiences a RIF, the lowest performing employees are the ones that are laid off.  Id.  Ms. Painter further stated that during the 2003 RIF, Alltel set forth general guidelines designating the number of employees which should have been rated "Highly Valued" and the number which should have been rated "Least Effective."  Id.  Once the lowest performers were let go, the people who were the next lowest, from an overall performance perspective, were re-ranked and moved down to a "Least Effective" rating.  Id.   Thus, because the skills set spreadsheet indicated Plaintiff was one of the lowest performers remaining after the RIF, she was given a "Least Effective" rating.

In May of 2003, Defendant terminated Plaintiff's employment.  Plaintiff testified she was told she was terminated because she received a "Least Effective" rating on

---

[6](...continued)
list for each of the employees within his department, including Plaintiff.

her last performance evaluation.  (Doc. 24-1, p. 18).  Defendant contends, however, it told Plaintiff she was being terminated for "unsatisfactory performance"  (Doc. 24-7, p. 7) and that it did terminate Plaintiff for performance reasons (Doc. 23, p. 17). Defendant replaced Plaintiff's vacancy with an internal employee, Robert Van Ness ("Mr. Van Ness"), a  Senior Application Programmer.  (Doc. 24 - 9, p. 8).

## II.   ANALYSIS

### A.   Standard of Review

Summary judgment is proper where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "The burden of demonstrating the satisfaction of this standard lies with the movant, who must present pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, that establish the absence of any genuine material, factual dispute."  Branche v. Airtran Airways, Inc., 342 F.3d 1248, 1252-53 (11th Cir. 2003) (internal quotations omitted). An issue is genuine when the evidence is such that a reasonable jury could return a verdict for the nonmovant.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-250 (1986).  In determining whether summary judgment is appropriate, a court must draw inferences from the evidence in the light most favorable to the nonmovant and resolve all reasonable doubts in that party's favor.  Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1149 (11th Cir. 2005).

## B.     Gender Discrimination

Plaintiff alleges she was the victim of gender discrimination in that she was discriminated against and terminated from her job on account of her gender in violation of Title VII and the Florida Civil Rights Act ("FCRA").  Both of these statutes have the same requirements of proof and use the same analytical framework; therefore, the Court shall explicitly address the Title VII claims with the understanding that the analysis applies to the FCRA claims as well.  Lawrence v. Wal-Mart Stores, Inc., 236 F. Supp. 2d 1314, 1323 n.11 (M.D. Fla. 2002).

To proceed with a Title VII claim, it is Plaintiff's burden to establish that her gender was a determining factor in the employment actions about which she complains.  Walker v. Nations Bank, 53 F.3d 1548, 1555 (11th Cir. 1995).  Plaintiff must establish a prima facie case using direct evidence of discrimination or by relying on circumstantial evidence to prove discriminatory intent.  Wilson v. B/E Aerospace, Inc., 376 F.3d 1079, 1086 (11th Cir. 2004).  To establish a prima facie case using direct evidence, a plaintiff must present "evidence, that, if believed, proves [the] existence of [a] fact without inference or presumption; in other words, "[o]nly the most blatant remarks, whose intent could be nothing other than to discriminate ... constitute direct evidence."  Id.  This is not a direct evidence case and thus, Plaintiff must establish a prima facie case pursuant to McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973), using circumstantial evidence.

In McDonnell-Douglas, the Supreme Court set forth the applicable legal framework for assessing circumstantial evidence discrimination claims.  Plaintiff is required to establish a prima facie case of discrimination by showing that: (1) she belongs to a protected class; (2) she was otherwise qualified for the position; (3) she was terminated; and (4) she was replaced with someone outside of the protected class.  Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 142, 120 S. Ct. 2097, 2106 (2000).   "Demonstrating a prima facie case is not onerous; it requires only that the plaintiff establish facts adequate to permit an inference of discrimination."  Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).

If Plaintiff establishes a prima facie case, the burden then shifts to Defendant to articulate some legitimate, non-discriminatory reason for the employment action, which is clear, reasonably specific, and worthy of credence.  Hall v. Alabama Ass'n of Sch. Bds., 326 F.3d 1157, 1166 (11th Cir. 2003).  At this stage, Defendant has a burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced.  Id. (citing McDonnell-Douglas, 411 U.S. at 802).  The Eleventh Circuit has described this burden on Defendant as "exceedingly light."  Batey v. Stone, 24 F.3d 1330, 1334 (11th Cir. 1994) (citations omitted).

Once Defendant satisfies its burden, the presumption against Defendant is rebutted, and Plaintiff must show that Defendant's proffered reason is merely pretext for an illegal motive.  McDonnell-Douglas, 411 U.S. at 802-04; Rojas v. Florida, 285

F.3d 1339, 1342 (11th Cir. 2002).   At this phase, Plaintiff must "introduce significantly probative evidence showing the asserted reason is merely pretext for discrimination."  Sheppard v. Sears, Roebuck & Co., 391 F. Supp. 2d 1168, 1180 (S.D. Fla. 2005) (quoting Zaben v. Air Prods. & Chems., Inc., 129 F.3d 1453, 1457 (11th Cir. 1997)).   Plaintiff cannot establish pretext merely by questioning the wisdom of the employer's reasons, at least not where the reason is one that might motivate a reasonable employer.   Alexander v. Fulton Cty., 207 F.3d 1303, 1339 (11th Cir. 2000) (citing Combs v. Plantation Patterns, 106 F.3d 1519, 1543 (11th Cir. 1997)); Damon v. Fleming Supermarkets of Florida, Inc., 196 F.3d 1354, 1361 (11th Cir. 1999) (courts "are not in the business of adjudging whether employment decisions are prudent or fair.   Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision").

Plaintiff may establish pretext in different ways.   She may either directly persuade the Court that "a discriminatory reason more likely than not motivated the employer or indirectly by showing Defendant's explanation is unworthy of credence." Jackson v. State of Ala. State Tenure Com'n, 405 F.3d 1276, 1289 (11th Cir. 2005). To withstand a motion for summary judgment, Plaintiff must produce enough evidence which would permit a reasonable finder of fact to conclude Defendant's articulated reasons for its decision are not believable.  Id.  "In evaluating a summary judgment motion, 'the district court must evaluate whether the plaintiff has demonstrated such weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence.'" Id. (quoting Combs v. Plantation Patterns, 106 F.3d 1519, 1538 (11th Cir. 1997).

### 1.    Plaintiff's Prima Facie Case of Gender Discrimination

It is not disputed that Plaintiff belongs to a protected class, was terminated and replaced by someone outside of the protected class.  Defendant does argue, however, that Plaintiff fails to state a prima facie case for gender discrimination because she is not otherwise qualified for her position.  (Doc. 23, p. 19).  Defendant argues Plaintiff has been overwhelmed by her job responsibilities and has had difficulty resolving fix tickets throughout her entire employment as a computer programmer.  Id. at 16.  Moreover, Defendant contends the deficiency in Plaintiff's performance, which was well documented in her performance reviews and admitted by Plaintiff in her deposition, demonstrates Plaintiff was otherwise not qualified for her position.  Id. at 17.

Plaintiff responds by citing to her employment evaluations and a statement by her supervisor, Mr. Sheffield, in an effort to demonstrate she was qualified for her position.  (Doc. 26, p. 4).  Plaintiff states that up until her last review, she received satisfactory or better employment evaluations.  Id. at 3.  She also notes Mr. Sheffield, her supervisor during the majority of time that she held her computer programming position, testified he was always happy with Plaintiff's performance.

Id. at 4.   Plaintiff's burden with respect to her prima facie case is minimal and Plaintiff has met her burden.

## 2.    Defendant's Non-Discriminatory Reason

Since Plaintiff has established a prima facie case of gender discrimination, Defendant now has the burden of "articulating a legitimate nondiscriminatory reason for the employment decision." Camera v. Brinker Intern, 161 Fed. Appx. 893, 896 (11th Cir. 2006).   Defendant's explanation for terminating plaintiff was that she was not performing up to its standards.   (Doc. 23, p. 17).   Accordingly, Defendant has stated a legitimate non-discriminatory reason for terminating Plaintiff.

## 3.    Plaintiff's Evidence of Pretext

Turning now to the issue of pretext, Plaintiff has the burden of putting forth sufficient evidence to raise a genuine issue of material fact with regard to whether Defendant's articulated reasons for terminating Plaintiff were pretextual.   Jackson, 405 F.3d at 1290.   In an effort to show pretext, Plaintiff argues there are a host of weaknesses, implausibilities, inconsistencies, incoherencies and contradictions in Defendant's case which demonstrate Defendant's explanation for terminating Plaintiff is false.   Id. at 14.   Plaintiff argues she was treated less favorably than Defendant's male employees for multiple reasons.   Because some of Plaintiff's arguments are more persuasive than others, the Court will address only Plaintiff's arguments which have persuaded it that there is a genuine issue of fact concerning the issue of pretext.

-11-

First, Plaintiff argues Defendant's explanations as to who terminated Plaintiff and why she was terminated are inconsistent and not credible.   Specifically, Plaintiff notes that in the EEOC response, Defendant stated the termination decision makers were Anne Raymond, Stella Painter, and Lauren Meadows.  (Doc. 36, p. 7).  Now, however, Defendant contends Ms. Painter made the decision to terminate Plaintiff and Ms. Raymond played no role in the termination.  (Doc. 23, p. 11).  Ms. Painter testified she made the decision to terminate Plaintiff, but only after asking Ms. Raymond whether Plaintiff had improved since the time of her annual review.  (Doc. 35- , p. 2).  Yet, Ms. Raymond testified she never evaluated Plaintiff's performance and "did not know what [Plaintiff] needed in the way of improvements." (Doc. 24-18, pp. 4).  In her follow up deposition, Ms.  Raymond testified Ms. Painter had asked her whether Plaintiff's performance had improved, and she responded that she had not seen any difference in Plaintiff's performance; however, Ms. Raymond qualified her testimony with a statement that she had not seen a difference in any of her employees' performances because she had not been supervising the group long enough to see a difference in anybody.  (Doc. 35-2, p. 2).   Thus, Plaintiff argues, Defendant's explanation as to its basis for terminating Plaintiff is not credible.

Plaintiff offers a second example of how Defendant's explanation for terminating Plaintiff is inconsistent.  Plaintiff notes that both Ms. Painter, and the Human Resources Director, Mr. Patton, testified Plaintiff was terminated for poor performance.  (Doc.24-6, p. 2; Doc. 24-7, p. 3.).  By contrast, Ms. Raymond,

Plaintiff's direct supervisor at the time of her termination, testified she believed Plaintiff was terminated due to a reduction in work force.  (Doc. 24-18, p. 4).  Thus, Plaintiff asserts these statements demonstrate the inconsistent positions taken by Defendant via supervisors and upper management in the company.  (Doc. 36, p. 8).

Next, Plaintiff asserts Defendant had a policy of placing employees on a performance plan before terminating them.  (Doc. 25, p. 6).  Plaintiff points to Mr. Sheffield's testimony that it was Defendant's policy to terminate an employee after two "Least Effective" ratings in a row and to place an employee with one Least Effective rating on a performance plan.[7]  (Doc. 26, p. 6; Doc. 36, p. 4; Doc. 24-19, p. 10).  Plaintiff states she received her only "Least Effective" rating on her last annual review, but was never placed on a performance plan before being terminated.  (Doc. 26, p. 6).  She further states she was replaced by an employee, Mr. Van Ness, who also received a "Least Effective" rating on his 2002 annual evaluation, and who subsequently received two additional "Least Effective" reviews after replacing Plaintiff.  Id.  Defendant has not terminated Mr. Van Ness.  Id.

Finally, Plaintiff argues the fact that Defendant did not disclose the skills set spreadsheet and its impact on Plaintiff's termination until the end of discovery demonstrates a genuine issue of fact as to whether Defendant actually relied on it

---

[7]  The Court notes that Ms. Raymond also testified that if Defendant had a performance issue with an employee, instead of terminating that employee immediately,  Defendant would typically put the employee on a performance plan first.  (Doc. 24-18, p. 4).

in making the decision to terminate Plaintiff.   (Doc. 36, p. 2).  Plaintiff points out that

Defendant had the following four opportunities to disclose the spreadsheet: (1) when

responding to the EEOC letter; (2) when filing its Rule 26 Disclosures; (3) when

responding to Plaintiff's first request for production and first set of interrogatories;

and (4) during the depositions of Mr. Sheffield and Mr. Patton.  Id. At 2-3.  Plaintiff

contends Defendant's failure to produce or mention such a critically important

document raises an issue as to whether Defendant's explanation that it relied on the

spreadsheet in deciding to terminate Plaintiff is credible.  Id.

The Court agrees with Plaintiff that there are sufficient inconsistencies and

contradictions in Defendant's account of Plaintiff's termination to create a genuine

issue of material fact regarding pretext.  Thus, the issue of pretext should be decided

by a jury.[8]

---

[8]  As the Court noted in its June 7, 2006 Order, the issues pertaining to
Defendant's Motion for Summary Judgment are close.  Notably, the Court has not
found any evidence of direct gender discrimination.  Rather, that Defendant
withdrew four names, both men and women, from the list of employees included
in the January 2003 RIF, as well as the fact that six other employees, men and
women, were also terminated at the same time Plaintiff was terminated weighs in
favor of Defendant.  It is improper, however, for the Court on summary judgment
to determine the weight afforded certain evidence and issues of credibility.
McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1240 n. 7 (11th Cir. 2003).

The Eleventh Circuit's decision in Cleveland v. Home Shopping Network,
Inc., is instructive on this point.  369 F.3d 1189( 11th Cir. 2004).  Notably, in
Cleveland, the Eleventh Circuit reversed a district court's grant of judgment as a
matter of law in favor of the defendant and found the defendant's shifting reasons
as to why an employee's act violated defendant's policies were sufficient to allow
the jury to question defendant's credibility.  369 F.3d at 1194 ("Proof that

(continued...)

Accordingly, it is hereby **ORDERED**:

1.     Defendant Fidelity Information Services, Inc.'s Dispositive Motion For Summary Judgment (Doc. 23) is **DENIED**.

2.     This matter is set for a **telephone status conference** on **September 11, 2006 at 2:00 p.m.** to set this case for trial.  Plaintiff's counsel is to initiate the conference call by contacting counsel for Defendant and then calling the Court's polycom telephone line: (904) 549-1949.[9]

**DONE AND ORDERED** at Jacksonville, Florida this 5th day of September, 2006.

L.
Copies to:
Counsel of Record

TIMOTHY J. CORRIGAN
United States District Judge

---

[8](...continued)
[defendant's] 'explanation is unworthy of credence' allows the jury to reasonably infer that [defendant] is 'dissembling to cover up a discriminatory purpose.'") (quoting Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000)).  Because this Court is required to view the evidence in the light most favorable to Plaintiff, it finds Plaintiff has offered enough evidence questioning Defendant's credibility.  As such, a jury ought to  determine whether Defendant's reason for terminating Plaintiff was pretext for discrimination.  Nevertheless, if this case proceeds to trial, Plaintiff must meet her burden of persuading the jury, by a preponderance of the evidence, that Defendant's reason for terminating Plaintiff was in fact discriminatory.  Moreover, the Court does not foreclose the possibility of revisiting this issue on a directed verdict motion at trial.

[9]  The quality of the audio connection is diminished by the use of speaker phones and cell phones and the parties are requested not to use these devices during the call.

-15-